UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH ZVOSECZ,

    Plaintiff,

v.

COUNTRY CLUB RETIREMENT
CENTER IV, LLC, *et al.*,

    Defendants.

Case No. 2:13-cv-874
JUDGE SARGUS
Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 54). Plaintiff filed a Response in Opposition (Doc. 60), to which Defendants have replied (Doc. 63). For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED IN PART**.

### I. BACKGROUND

This case centers on Plaintiff Joseph Zvosecz's employment with, and ultimate termination from, Defendant Country Club Retirement Center IV, LLC ("CCRC"). CCRC is a senior healthcare facility located in Bellaire, Ohio. Plaintiff began his employment with CCRC as a Nursing Home Administrator in February of 2006. (Doc. 53, Zvosecz Depo. at 45). In this role, Plaintiff was tasked with the "supervision of all day-to-day nursing and residential care operations at CCRC." (Doc. 3, Compl. at ¶ 8). Plaintiff was also expected "to assure at all times that [CCRC] is providing the best possible care and services to all residents, to maintain the highest staff morale and productivity, and to maximize the efficiency and profitability of the

business." (Doc. 55, Ex. 4, Job Descrip.). Included in this responsibility was Plaintiff's duty to make sure CCRC operated "in conformity with federal, state and local laws." (*Id*.).

From 2006 to 2010, the parties' business relationship appeared amiable and unremarkable. But in 2011, this relationship began to deteriorate. Beginning in July 2011, Janet Harris, CCRC's CEO, sent Plaintiff a series of emails and letters outlining her concerns and disappointment with CCRC's performance in the areas of profitability, payroll, inspections, budgeting, and staffing. (*See* Doc. 55, Ex. 13, E-Mail; Doc. 55, Ex. 11, E-Mail; Doc. 55, Ex. 14, Letter; Doc. 55, Ex. 18, Letter). According to Harris, CCRC showed no signs of improvement throughout 2011. (*See* Doc. 51, Harris Depo. at 110-12).

Relevant to Plaintiff's claims are his health history and compliance reports during this time period. On December 22, 2011, Plaintiff was diagnosed with Multiple Sclerosis. (*See* Doc. 61, Ex. 1, Zvosecz Decl. at ¶ 13). According to Plaintiff, he informed Harris and Jack Holland, owner of CCRC's parent company, Holland Management, Inc., of his condition in mid-January. (*See* Doc. 53, Zvosecz Depo. at 253-54).[1] Regarding CCRC's compliance issues, Plaintiff reported at least three potential compliance violations that occurred or were likely to occur at the facility during the months of December 2011 and January 2012. (*See* Doc. 3, Compl. at ¶¶ 13, 16, 17; Doc. 53, Zvosecz Depo. at 127-32, 203-13, 226-38). When Plaintiff learned of these possible violations of state and federal law, he immediately reported them to CCRC's Corporate Compliance Officer and/or Harris. (*See id*.).

In late January 2012, after seeing "zero improvement" at CCRC throughout 2011, Harris decided to hire a new Nursing Home Administrator to replace Plaintiff. (Doc. 51, Harris Depo. at 110). Consequently, on February 2, 2012, Harris "removed" Plaintiff from his role as Nursing

---

[1] Harris refutes this contention, claiming that she did not know that Plaintiff had MS at any time before he was terminated from his employment with CCRC. (*See* Doc. 51, Harris Depo. at 12). She did admit to generally suspecting that Plaintiff "had health issues" throughout 2011 and 2012. (*See id*. at 45).

2

Home Administrator, placing him on "paid leave." (*Id*. at 22-24). The same day, Harris addressed and sent Plaintiff Family Medical Leave Act paperwork in light of his "potential health issues." (*Id*. at 63-64; Doc. 55, Ex. 26, FMLA Notice). While on leave from February to July, Plaintiff continued to receive a pay check from CCRC. (*See* Doc. 55, Harris Ex. 21, Payroll History). However, on June 18, 2012, Plaintiff began working as a Nursing Home Administrator for Autumn Healthcare, a competitor of CCRC. (Doc. 53, Zvosecz Depo. at 47). When CCRC discovered Plaintiff's new position, CCRC removed Plaintiff from its payroll and officially terminated Plaintiff's employment. (*See* Doc. 55, Ex. 38, COBRA Notice).

Following this series of events, Plaintiff filed a Complaint against Defendants CCRC, Holland Management, Inc., and Janet Harris in the Belmont County Court of Common Pleas, alleging claims for wrongful termination, disability discrimination, and violation of the Family Medical Leave Act. (*See* Doc. 2, Ex. 1, Compl.). The action was then removed to this Court on September 4, 2013. (*See* Doc. 2, Not. of Removal).

## II. STANDARD OF REVIEW

Defendants bring this motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In accordance with the Rule, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is

3

"merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

Finally, in considering the factual allegations and evidence presented in a motion for summary judgment, the Court acknowledges that it must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox*, 53 F.3d at 150. It is with these principles in mind that the Court proceeds.

### III. DISCUSSION

In his Complaint, Plaintiff alleges three causes of action. First, Plaintiff asserts that he was wrongfully terminated and/or removed from his position as Administrator for reporting and preventing potential compliance violations at CCRC in violation of Ohio Revised Code Sections 4112.01 – 4112.32. (*See* Doc. 3, Compl. at ¶¶ 18-22). Second, Plaintiff alleges that Defendants discriminated against him on the basis of his MS diagnosis, by "regarding" him as disabled and unlawfully terminating him because of this perceived disability, in violation of Ohio Revised Code Section 4112.02. (*See id.* at ¶¶ 29-33). Third, Plaintiff claims Defendants violated his

4

rights under the Family Medical Leave Act ("FMLA") by designating him a "key employee" under the Act and unilaterally placing him on involuntary leave. (*See id.* at ¶ 42). Because Plaintiff's FMLA claim is the only claim over which the Court has original jurisdiction, the Court will address it first.

A. **Plaintiff's FMLA Claim**

As summarized above, Plaintiff argues that Defendants unlawfully interfered with his FMLA rights by unilaterally placing him on leave and designating him a "key employee." Defendants assert that they did not force Plaintiff to take FMLA leave, but merely offered him the opportunity to do so. They also argue that even if the Court determines Defendants forced Plaintiff to take involuntary FMLA leave, Plaintiff's claim should still be dismissed as it is not yet ripe.

The FMLA allows eligible employees to take 12 weeks of protected medical leave per year for a variety of health-related reasons. *See* 29 U.S.C. § 2612(a)(1). To ensure employers comply with FMLA mandates, the Act provides a private right of action against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615. FMLA claims generally fall into one of two categories: entitlement/interference claims or retaliation/discrimination claims. *Madry v. Gibraltar Nat. Corp.*, 526 F. App'x 593, 595 (6th Cir. 2013). Here, Plaintiff rests his claim on a subset of the entitlement/interference sort: the "involuntary leave" theory.

To establish a *prima facie* case of general interference under the FMLA, a plaintiff must prove that: (1) he was an eligible employee; (2) his employer was subject to the FMLA; (3) he was entitled to FMLA leave; (4) he notified his employer of his intention to take FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Wysong v. Dow*

5

*Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007). The Sixth Circuit has interpreted the fifth factor to encompass circumstances where an employer "somehow has used leave against the employee in an unlawful manner, as provided either in the statute or regulation." *Id.*; *see also Brewer v. City of Dayton*, No. 3:11-CV-307, 2013 WL 2378041, at *4 (S.D. Ohio May 30, 2013) (Rose, J.). This includes situations in which an employer forces an employee to involuntarily take FMLA leave when the employee is not otherwise eligible under the Act. *Wysong*, 503 F.3d at 449; *Huffman v. Speedway LLC*, No. 14-1668, 2015 WL 3973325, at *4 (6th Cir. July 1, 2015). However, such an "involuntary leave" claim ripens only "when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past"—for only *then* has the employer actually interfered with the plaintiff's FMLA rights. *Wysong*, 503 F.3d at 449; *see also Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 488 (6th Cir. 2013); *Kleinser v. Bay Park Cmty. Hosp.*, 793 F. Supp. 2d 1039, 1045 (N.D. Ohio 2011); *Brewer*, 2013 WL 2378041, at *4. As the Sixth Circuit recently explained:

> An employer who forces an employee who does not have a job-restricting serious health condition—i.e., an employee who remains capable of performing all essential job duties—to take FMLA leave may improperly exhaust the twelve weeks of leave to which the employee is statutorily entitled each year. But the injury to the employee's FMLA rights would remain inchoate unless she develops a serious health condition within a year and requests FMLA leave. If the employer were to grant the employee the full twelve weeks of leave to which she is entitled—i.e., not counting the previous involuntary FMLA leave against her annual limit—the employee would not suffer a cognizable injury under the FMLA. Therefore, an involuntary-leave interference claim ripens *only* when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past.

*Huffman*, 2015 WL 3973325, at *4 (internal citations and quotations omitted). As such, to prevail on this type of FMLA interference claim, Plaintiff must show that (1) he did not qualify as an eligible employee under the FMLA at the time he was placed on involuntary leave and (2)

6

he unsuccessfully sought FMLA leave that was denied because of the leave previously forced upon him. *Wysong*, 503 F.3d at 449; *Kleinser*, 793 F. Supp. 2d at 1045.

In their motion, Defendants assert Plaintiff's FMLA claim should be dismissed for two reasons: (1) Defendants never forced Plaintiff to take FMLA leave and (2) even if they had, his claim is not ripe. Resolution of Defendants' first argument is unnecessary as the Court finds Defendants' second premise well-taken and dispositive. Plaintiff has provided no evidence indicating that he has been denied further leave or has otherwise been precluded from exercising his rights under the FMLA. As such, Plaintiff has alleged only hypothetical, as opposed to actual, interference with the Act's protections. Therefore, even assuming that Plaintiff was forced to take medical leave and that all other elements of his claim were met, Plaintiff has still failed to allege an actionable claim under the FMLA.

Plaintiff attempts to distinguish this case from *Wysong* and the other involuntary leave cases cited above by emphasizing Defendants' actions in designating him a "key employee" under the FMLA. This "key employee" provision serves as an exemption to the FMLA's general mandate that an employer must restore an employee to his previous position (or a substantially equivalent one) after the employee returns from leave. *See* 29 U.S.C. § 2614(a) – (b). Otherwise stated, the "key employee" exemption operates as an affirmative defense that employers may utilize to defend their decision to terminate or demote an employee after his or her FMLA leave has expired. *See Kephart v. Cherokee Cnty., N.C.*, 229 F.3d 1142 (4th Cir. 2000).

Plaintiff argues his designation as a "key employee" interfered with his FMLA rights in several ways. Plaintiff first argues that this designation will (1) prevent Plaintiff from using leave in the future, and (2) force him "to build up [ ] leave in any new employment he may obtain." (*See* Doc. 60, Resp. at 50). The Court acknowledges that these concerns may very well

qualify as unlawful interference under the Act—*if* and *when* they actually come to fruition and result in the denial of FMLA benefits in the future. But as of now, these harms, like those discussed in the cases above, are premised on future hypothetical situations. As stated earlier, Plaintiff has presented no evidence showing that he has been denied FMLA leave by either Defendants or future employers as a result of Defendants' actions in the past. Because the record is devoid of any evidence demonstrating that Defendants interfered with Plaintiff's FMLA rights at this point in time, the Court finds Plaintiff's claim is not ripe.

Plaintiff also argues that Defendants wrongfully invoked the "key employee" provision "to deny Plaintiff restoration to his position." (Doc. 3, Compl. at ¶ 42). However, Defendants do not rely on, or attempt to justify their termination decision with, the "key employee" exemption. In fact, neither party has provided any facts or evidence suggesting that this designation had any bearing on Plaintiff's removal or reinstatement decision. Defendants argue that Plaintiff was removed from his position as Administrator and subsequently not reinstated due to CCRC's decline in performance and his employment with Autumn Healthcare. Plaintiff argues he was removed from his position as Administrator (and subsequently not reinstated) because of his compliance violation reports and/or disability. Therefore, neither party asserts that Plaintiff's status as an alleged "key employee" was the reason for Plaintiff's removal or lack of reinstatement. Because Defendants have not invoked this exemption as an affirmative defense, the "key employee" designation is largely immaterial. Explained otherwise, a finding that Defendants wrongfully designated Plaintiff a "key employee" would make little difference in this case: such a conclusion would result only in prohibiting Defendants from presenting an affirmative defense that they have not even pled.

For these reasons, the Court finds Defendants are entitled to judgment as a matter of law on Plaintiff's FMLA claim. Plaintiff has failed to allege anything other than future hypothetical interference with his FMLA rights. Accordingly, Plaintiff's FMLA claim is not ripe. Defendants' Motion for Summary Judgment as to Count III of Plaintiff's Complaint is therefore well-taken, and Plaintiff's FMLA claim is hereby **DISMISSED**.

**B.     Plaintiff's State Law Claims for Wrongful Termination and Disability Discrimination**

Plaintiff also alleges two state law claims against Defendants: wrongful termination in violation of Ohio Revised Code Sections 4112.01 – 4112.32 and disability discrimination in violation of Ohio Revised Code Section 4112.02. The only basis for federal subject matter jurisdiction over these state law claims appears to be through supplemental jurisdiction. (*See* Doc. 2, Not. Removal). However, for reasons set forth above, the Court has dismissed the only claim over which it had original jurisdiction, Plaintiff's FMLA cause of action. As such, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims— a decision that is both authorized by statute and recommended by the Supreme Court. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

Here, the Court finds that remanding Plaintiff's state law claims to the state court in which they were originally filed "best promote[s] the values of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to . . . remanding them to state court if the action was removed.") (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-

55 (6th Cir. 1996)). Accordingly, this case is hereby **REMANDED** to the Belmont County Court of Common Pleas for further consideration.

## IV. CONCLUSION

For reasons set forth above, Defendants are entitled to judgment as a matter of law as to Plaintiff's FMLA claim. Defendants' Motion for Summary Judgment is therefore **GRANTED** as to Count III.

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and instead **REMANDS** them to the Belmont County Court of Common Pleas for final resolution.

The Clerk shall **REMOVE** Document 54 from the Court's pending motions list.

The Clerk shall also **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                                          /s/   8-27-2015
                                **EDMUND A. SARGUS, JR., CHIEF JUDGE**
                                **UNITED STATES DISTRICT COURT**